There are thousands of patent attorneys in this country that act for tens of thousands of inventors, and many of those inventors are joint inventors. Fish and Moore were two joint inventors. In 1989, they hired Woody Higgins to file what was known as an omnibus patent application covering ten inventions embodied in a microprocessor chip that they had worked on together. The issue of who invented what came up in 1990 and in 1992 and more recently in litigation to correct inventorship. Applying California law, the district court has excluded Higgins from testifying, and it's disqualified counsel for inducing Higgins to violate his duty of competence to the co-inventor Moore. This case has wide implications and is about the joint client's litigation exception to the attorney-client privilege, which should apply in this case. I think we first should start with framing the issue, and I'd like to paraphrase the Spalding decision. The issue is whether the joint client exception to the attorney-client privilege, as it applies to communications among joint inventors and their patent attorney, is one of substantive patent law and should be subject to a uniform national standard. That's exactly what was held in Spalding. Spalding saw the invention disclosure records, invention records, as an important first impression with respect to attorney-client privilege. That was settled. So how can we decide it? I'm saying that that is an important, that was an important issue then, and in this case I think equally important and also of first impression is the adoption of the joint client exception to the attorney-client privilege. In other words, that there is no privilege in the case of joint inventors represented by an attorney as to the communications between them and the conflict that arises out of that representation. Let me follow up on Judge Newman's question because I have exactly the same concern. I can understand your argument about why, notwithstanding the propriety of the attorney's conduct that led to the disqualification. I don't understand why we have jurisdiction to address the question of the attorney-client privilege apart from the perceived, adjudicated by the district court, violation of the duty of loyalty, which led to the disqualification. Your brief is addressed mainly to the attorney-client privilege. Why aren't we limited, at most, to the question of the propriety of the order disqualifying counsel? Because I think the two go hand-in-hand. In order to... Well, let me ask the question this way. Suppose we agree with you in the abstract that you write about attorney-client privilege. There is still a problem with loyalty to the other client, is there not? In other words, you may not have a privilege problem, but as counsel for two people who end up suing one another involved in opposite sides of a lawsuit, you have a loyalty problem quite apart from the privilege, correct? I mean, if you could represent Judge Newman and me with respect to a particular matter, and we ended up suing one another, you wouldn't represent one of us against the other, right? I think that's the substantial relevance test, and you're correct. You know you don't have that. But isn't that the issue that is pertinent to what's appealable here, if anything is appealable? Well, really, because it's whether or not is Higgins appearing as an attorney for Patriot or is he appearing as a fact witness in our position is that he's a fact witness. And the district court made that very clear in its decision, and I could quote from the district court's decision. Indeed, it's difficult to understand what relevant evidence Higgins could offer as a witness in this case other than his historical account of the respective roles and contributions of Fish and Moore in the patent prosecution process. So the question is, is Higgins qualified or is he going to be able to testify? I understand that the underlying case has been settled, but the fact is that the inventorship issue is still out there. These patents are being litigated in Oakland and in the Eastern District of Texas, and the defense of improper inventorship naming is still hanging out there. So whether or not Higgins could testify and should testify, should be available to testify, I think is relevant for this appeal because it reflects on counsel's so-called inducement of Higgins to breach his duty of loyalty to Moore. So I think that what's before the court is whether or not the policy enunciated in Spalding should be followed and make the joint client exception to attorney patent common law. The test in the Midwest case is when the procedural issue, such as attorney-client privilege, is not itself substantive to patent law, is it governed by federal circuit law if it's pertinent to patent law? It's unique. The test applies here, and again I would paraphrase Spalding. The applicability of the joint client exception to the attorney-client privilege clearly implicates the substantive and unique patent law issue of inventorship. Majority courts follow the exception. The Supreme Court agrees with it. It's actually part of the California Rules of Evidence, and we urge that in order that we don't have an imperfect or an unequal application of the exception that it be, following Spalding, brought into the federal patent common law. I'd like to address two other issues, which is Higgins as a witness, which you've discussed already, and the successor issue. We believe that there has been no inducement for Higgins to breach. First, he acted in the beginning for Fish and Moore. Then Fish assigned his interest to the Fish Family Trust, so Higgins was then representing the Trust and Moore. The Trust then assigned its interest to Nanotronics, and Higgins was then representing Nanotronics and Moore. And lastly, Nanotronics assigned its interest to Patriot, and then Patriot and Moore were the clients of Higgins. That existed from 94 until 2001 when Higgins retired. At the time of the initial retention of Higgins, Fish took the complete lead in handling the patent matter, the patent application, and that continued right through Patriot's tenure. Moore was disinterested, passive. He made no contributions and basically was non-responsive when asked by Higgins for information. Moore left everything to Fish and his successors, including all the costs. Patriot's counsel, when they entered the enforcement program, had Higgins' files, including the files of the 336 patent initial filing. Why? Because Patriot was the client. Patriot had access. Patriot had custody of all the files and had controlled the prosecution process up until that point. Counsel reviewed the files, and in the files, there was a serious issue of advertisement. There were principally two, some correspondence in 1990 and 1992, that's in the joint appendix at 471 and 476. At that point, counsel felt it would be remiss if didn't discuss what was in the files with Higgins to learn what was his state of knowledge. We quickly determined that Higgins had no independent recall whatsoever beyond what was in the file. Counsel provided the lower court with affidavits at the appendix pages 573 and 640, indicating that the only source of information about the interventorship dispute or the question raised in the files had come from the files and that Higgins could not and did not add anything to that knowledge. Higgins testified in deposition that he had only three contacts with Moore. Two were prior to filing the application on August 3, 1989, where he said very little and deferred completely to Fish. No issue as to interventorship was presented at that time. The third was in 1990, after the application was filed, and it was the first and only contact Moore had with Higgins about interventorship. This is at the joint appendix page 471. The conversations that took place at that time were memorialized in a letter that Higgins wrote to Fish on October 1, 1990, and it memorialized conversations he had with Leckron, who was Moore's client, about interventorship. There's nothing in that letter that would suggest that Moore did not want the information shared with, the information that came out of these conversations shared with Fish, and in fact Higgins, in representing both clients, was keeping both clients completely informed as to what was going on with these discussions about interventorship. Moore then was aware of the fact that in 1992, there was a restriction requirement from the Patent Office, and Higgins dutifully reported that out to the client. At that time, the client was Helmut Falk, who was in Anatronics. Mr. Lynch, I'm sorry to interrupt, but you're getting into your battle time, and I just had a housekeeping matter that I wanted to ask you about, and that's that I may not have my entire file here, but did you enter an appearance in this case? I have. Okay, so that was subsequent to the brief, the filing of the briefs? I don't know why I was left off the brief, but I know I was, there's an appearance for me in the file. Okay, all right, just... I think I would have been tomahawked by the clerk when I came in this morning. I was not. All right. In 1992, the Patent Office issued a restriction requirement, and there's a standard clause in every restriction requirement that says if there's going to be change in interventorship, you have to do something about it. The restriction requirement divided it up into ten separate inventions. Higgins reports this to the client, copies Fish and Moore, and said, I need information about interventorship. Fish responds the very next day, laying out the ten inventions as laid out by the patent examiner, and saying who was the inventor of each, sometimes it was Fish, sometimes it was Moore, and I think it was one that was Jonas. Moore made no response whatsoever. We believe that at that point, he basically acquiesced in Fish's knowledge of the conversation that went on back in 1990, and later Patriot's knowledge about the same issues, because it had the files as a successor from Fish. And that these issues, unresolved issues, and Higgins continued representation of both parties that shifted from on the Fish side, from Fish to the Trust and then to Patriot. During Moore's deposition, the attorney-client privilege was never asserted, why? Because Moore had absolutely no recall of anything ever received from Higgins. He was totally disinterested and passive about the patent process. So we're faced with this, counsel finds out that neither Moore nor Higgins had any recall beyond what was in the files, and our position is that Higgins should be allowed to testify about the evidentiary status of what's in the files, and nothing further. To be sure that I understand, the relief that's being requested, if for whatever reason, let's say it's just too complicated, we were to think that perhaps after the settlement, the disqualification need not stand on the record, that's not the relief you're requesting? We certainly want to have our professional reputation restored, Your Honor. That's correct. But you haven't asked, well, you did ask for that in your brief, that's true, but that hasn't been the essence of your argument here. No, the main thing we are urging on appeal is that the joint-client exception to the attorney-client privilege, meaning that there is no privilege, be made part of this, the Federal Patent Common Law, the way that the invention records were extended in the Spalding decision. Okay, we'd better hear from the other side, we're exhausting your rebuttal time. Mr. Cook. Good morning, Your Honor. Excuse me. Your Honor's addressed probably the most important point first, which is whether or not there is jurisdiction in this case. Well, let's assume there's jurisdiction, let's just talk about jurisdiction of which issues. The duty of loyalty, there were two grounds for the district court's disqualification. One was breach of attorney-client privilege and the other was the duty of loyalty. The duty of loyalty was not part of the appeal here. As a result, if there was any relief to be granted by virtue of what counsel has argued here, it wouldn't go to the disqualification for loyalty because that issue has not been raised in the opening brief or anywhere for that matter. So the duty of loyalty, this is a common... I don't recall your arguing that. I thought your argument was that nobody was hurt. With what transpired, the case is over, it's been settled? That too, Your Honor. Absolutely, the case has been settled. There is no ongoing inventorship dispute. The relief that's been requested here to create a new federal common law for joint inventors is moot now because the inventorship dispute has been settled, it's been resolved, there's nothing left. Now, counsel has pointed out that there may be issues with inventorship in the infringement cases, but the new common law that he's asking for, which is there shouldn't be any privilege in inventorship disputes between the inventors, has no application to the infringement cases. This is a very important point. The inventorship dispute has been completely settled. There's a stipulated judgment entered on the record, it's in the appendix, it resolves the inventorship issue completely. So the idea that this new federal common law that counsel would like this court to adopt will have some bearing in the future in the subsequent issues over inventorship in the infringement case simply isn't correct. The argument that the appellants are making, in part as I understand it, I think you may be disagreeing with this and free to do so, but you tell me, is that we have jurisdiction in this case because there was a sanction issued in this case that is reviewable under Ninth Circuit law. And that is when a lawyer is disqualified based on a finding by a trial judge that there has been a violation of some ethical principle. That that is independent of any settlement of the underlying dispute, that gives rise to an appealable order on behalf of the attorneys. They say, that's what happened here, we were disqualified based on a finding by the district court of a violation of an ethical principle. That's correct. You further say that if the judge had viewed the joint privilege issue differently, the judge would not have disqualified us. All right. Now, what's wrong with that reasoning for establishing a jurisdiction and b, setting the case up for us to resolve? Right. First thing is that the judge still would have disqualified them by virtue of the duty of loyalty. It's a separate fiduciary duty that is separate and apart from the under California law. It's a broader duty, and under California law, that was a separate basis for disqualification. It has nothing to do with the joint inventor or the joint client privilege. Strictly the duty of loyalty. The attorney, whether he testified or not, if he had been called as a witness and properly interrogated, that's not the question. This is a garden variety case of an attorney entering into, working against a former client on a matter that's substantially related to the former representation. That's what Mr. Higgins did. Mr. Higgins agreed to work with the Beatty firm in order to divest Mr. Moore of his joint inventorship rights. And the Beatty firm, under California law, by virtue of having solicited him to do this, were themselves disqualified. It's mandatory under the duty of loyalty in California law. Your opposing counsel says that Mr. Higgins was really not involved in the representation, but instead was simply a fact witness. And therefore, the predicate for the disqualification has to have been attorney-client privilege, because there wasn't any duty of loyalty implicated by his position simply as a fact witness. Well, the idea that Mr. Moore didn't disclose confidences, I think the argument depends on their assumption that Mr. Moore didn't disclose confidences to Mr. Higgins. Let's assume for the moment that there isn't any attorney-client privilege between Mr. Fish and Mr. Moore, if I have the name right. And that your opposing counsel is right on the merits of the joint attorney-client privilege. What about the argument that Mr. Higgins is simply a fact witness, and therefore his appearance in the case doesn't implicate the duty of loyalty? Because he's simply being called to testify as to what he knows, and then his testimony is subject to any privilege objection that may arise. But if none arises, then he just testifies as a fact witness. I wouldn't have any disagreement with that. The problem with the question, though, is that the duty of loyalty, he signed on to assist the Beatty firm in overturning Mr. Moore's inventorship rights. What is it that he did that's different from something a fact witness would have done, who was simply contacted by one side's lawyers and questioned and prepared to testify? Well, for one thing, he agreed to work with him as a consultant. He's a lawyer. He's Mr. Moore's former lawyer. And he was paid $31,000. So he was a complete consultant, just as though he's a lawyer. His name didn't appear on the case, but he was working against Mr. Moore. The idea that counsel spent a lot of time trying to convince the court that Mr. Moore disclosed no confidences to Mr. Higgins. But Judge Fogel found that he did. Judge Fogel found that Mr. Moore disclosed confidences to Mr. Higgins because Mr. Higgins said that he did. And he also found that the Beatty firm intended to use those confidences because they argued that Mr. Moore had made certain admissions to Mr. Higgins. So those findings haven't been challenged here. Those weren't challenged in the opening brief. The fact of Mr. Higgins having client confidences as a matter of fact was never raised and that issue has been waived. In addition, under California law, and I think most law of privilege, a former client isn't obliged to prove that he disclosed confidences to his attorney in order to prove a disqualification. It's assumed that he did. And the reason is that if a client had to prove that he disclosed confidences, he would have to reveal those confidences and that would defeat the purpose. It would be a catch-22 situation. So the issue of whether or not Mr. Moore disclosed confidences is a red herring. It should not be taken up by the court. He's presumed to have done so. He was found to have done so. That finding hasn't been challenged other than right here at this very moment. It was never raised in the opening brief. In your view, what are the remaining issues? Your opponent says that part of the problem will be then if, for instance, there were no disqualification, there might be a fee obligation. That's not before us, is that right? That's correct. And as I said, the reason the disqualification based on attorney-client privilege, which is the issue before the court, is only one of two grounds for disqualification. The other is the duty of loyalty, which is not before the court. And as a result, the stigma of disqualification, no matter what this court does, isn't going to be removed. It still is a stigma that they have to deal with in their fee dispute and any potential malpractice claim. So they can't get where they're trying to get. So you don't understand their appeal as encompassing the alternative ground of duty of loyalty? No, I do not. Well, just in case we disagree with you on that, let me make sure I understand what your position is with respect to the scope of our appellate jurisdiction, because there's been a lot of argument about appellate jurisdiction, at least in the papers and so forth. Do you agree that in the Ninth Circuit, if there is a disqualification order, which is predicated on the specific finding of a knowing violation of an ethical principle, that even if the underlying case settles, that that constitutes a sufficient sanction to be appealable by the lawyers alone? Assuming it's raised. If they have cognizable injury. I agree. Well, that's sort of the question. I mean, would the Ninth Circuit regard that kind of thing as cognizable in the sense that it would be damage to reputation? Disqualification per se doesn't do it. Well, disqualification for having violated, based on a finding of a violation of an ethical rule. Yes, that's a necessary predicate. I agree. But then it's necessary to go further and to actually assert the nature of the injury. Well, the argument is that that is enough in and of itself to constitute injury to reputation sufficient to trigger the right to an appeal. Do you agree with that proposition or not? No, I do not. The Ninth Circuit seems to say that. Are you familiar with the United States against Taleo case, which is about six years old from the Ninth Circuit? I don't. Perhaps it's unfair to read the language to you and ask you to comment on it on the fly. But it does say that when the district court makes a finding and reaches a legal conclusion that, in this case, the name of the party, knowingly and willfully violated a specific rule of ethical conduct, such a finding per se constitutes a sanction. And then found that the sanction is appealable. Because it sounds like the Ninth Circuit is saying that an order, at least similar on its face, to the order in this case disqualifying counsel based on a violation of an ethical principle would be appealable. Well, I think that the Ninth Circuit law says that the attorney, if he can prove injury, has standing. But not all disqualifications result in an injury. Isn't that automatically an injury to a lawyer's reputation is all the lawyer has? I don't believe so, Your Honor. I believe that in this case, Mr. Beatty, the Beatty firm has tried to argue, and this is a good example of it, because the specific injury that's being asserted here isn't cognizable. They have raised a disqualification by virtue of a waiver of privilege, and they haven't contested the loyalty issue. The matter that they've raised isn't going to get them where they're trying to get. It isn't going to overcome the disqualification. If you're waiting for my decision, I haven't reached it as yet. Is there anything else you need to tell us? I think that we have the issues in mind. The last point that I would make is that the successor in interest issue, again, Patriot was not a successor in interest to Mr. Fish. The reason that he was not, that Patriot was not a successor in interest is because Amir Assani is not a successor in interest. In addition, in a prior proceeding between Patriot and Mr. Fish, they were found, Patriot argued that it was not a successor in interest in order to overcome a royalty obligation to Mr. Fish, and was successful. They found that since they were not a successor in interest, they had no royalty obligation. Mr. Fish, I'm sorry, Nanotronics, the company that assigned the patent to Patriot, remained in business. It didn't sell all of its interests over to Patriot. All it did was sell its assets. It didn't convey all of its benefits and obligations of the transaction. As a result, it was Amir Assani. There was no successor in interest status. Do we have any more questions? Thank you, Mr. Cook. First, Your Honor, on the duty of loyalty issue, there's a little bit of whitewash being applied here. There's nothing in the record that suggests, and Mr. Cook says this, that Higgins was hired to work against Moore. That's not the case at all. Look at the bills and the retention agreement. He was retained to help us, to help counsel, to prosecute infringement cases. We had filed five infringement cases. We were getting ready to do the claim construction, things you have to do under the Northern California rules. In the course of looking at the files, this inventorship issue came up. Counsel, as I said, would be remiss if they didn't inquire as to Mr. Higgins' knowledge of that. We discovered that it was limited to what was in the files. There are two things here. He was hired to help in the infringement case. It had nothing to do with Mr. Moore. As a matter of fact, that helps Mr. Moore's position. Then it became a fact witness because of what he knew about this inventorship issue. Those are two separate things. He wasn't compensated to tell whatever story the counsel thought he should tell. He was compensated for the work he did to help us in the infringement area. That's a whitewash. The fact that the inventorship issue has been settled is also a whitewash. The fact is that it's still out there. This court will have to face that now or later. The same issue of privilege will come up. Have you raised the duty of loyalty issue in your brief? In the reply brief, we deal with it. I think the point we make in the reply brief is that the attorney-client privilege is at the core of everything here. It's at page 5 of our reply brief. The district court used the privilege to disqualify counsel first on the duty of loyalty issue and then the duty of confidentiality issue. It really goes to the second. It really has to do with the confidentiality issue. If I could just address the predecessor issue, the district court couldn't have gotten this more wrong. It cites the teletronics case for the proposition that an assignee doesn't inherit the attorney-client relationship. I puzzled over that for quite a bit of time. I read the cases. If you go back and read the cases, the teletronics cites the SMC case from the District of New York, 1984. The proposition that comes out of those cases is that an assignment of intellectual properties is not assigned the attorney's, the astronaut's attorney to the assignee. We don't have anything like that here. Both cases involved a novel proposition that a former patent owner who had hired counsel to obtain a patent, and that patent counsel is now representing a defendant against or defending a charge of infringement by a subsequent patent owner, that that patent attorney couldn't appear because he couldn't undertake a charge of invalidity or assert invalidity of a patent he previously obtained. That was dismissed as being simply dead wrong. That's what the case law says. Frankly, Higgins, there was never an issue of joint representation. Higgins represented everybody here in the chain. He represented Fish, the Trust, Nanotronics, and Patriot, along with more. So there's no issue of assigning attorney-to-attorney relationship or privilege. So the question is, clearly, the record is very clear that the entire right title interest flowed down to Patriot. The Nanotronics litigation was over a royalty issue, which was a side issue. The California court found that that was particular and individual to Nanotronics. It was not a liability. It was assumed by Patriot. That doesn't affect the title. It doesn't affect the entire right title and interest. It doesn't affect Patriot's status as the successor in interest. And then the district court uses Fish's waiver, which we found really is not relevant to the successor issue. And then it somehow says that we asserted that we're a joint holder of Moore's attorney-client privilege. We never made that claim. We never made that assertion. It's dead wrong. And then the court cites the Teletronics case saying that you can't inherit the attorney-client relationship. The court was dead wrong in that as well, because that's not what those cases stand for.